# SUPREME COURT.

ANNIE E. BELL, administratrix, &c., agt. JANE P. SPOTTS
*et al.*, administratrix, &c.

*Negotiable securities, found among papers of a deceased owner — what effect
may be given to them.*

Where securities, such as a due bill and a promissory note, are found in
the possession of a deceased at the time of his death, the presumption
arising from such possession is, that they are evidences of indebtedness
to the deceased; but this presumption may be rebutted by proof going
to show a defense to the admission, on the face of the security, such as
of its origin or of the indebtedness for which it was given, or of pay-
ment of any part.

Where a due bill is given which, on its face, purports to be for borrowed
money and there is no proof of its origin nor evidence to show any
defense to the admission in the due bill that it was for borrowed money,
nor any evidence of payment, the mere declaration of the holder, before
his death, that he had no claim to present against the estate of the maker
of the due bill, is not conclusive against the admission of the due bill.

When a promissory note is given by S. to B., purporting to be for value,
and it is proven on the trial that the note was given for one-half of the
amount of the purchase-money in an intended purchase of a steamboat,
which purchase is not made and carried out as agreed upon by B. and S.,
but subsequently by B. and M. C. & Co., the consideration of the note
wholly fails by the act of B. and remains in his possession a worthless
paper.

The assent of S. to the second agreement, which contains a clause that B.
and M. C. & Co. might each, individually, sell to S. a one-fourth of his
one-half share in the boat whenever S. saw fit to take it and could make
the requisite payment (which S. was under no obligation to do), does not
show any interest of S. in the boat, in the absence of proof that he
received from B., or from M. C. & Co., such share as the conditional
agreement allowed, or that he performed the conditions precedent to an
assumption of an interest, viz., the having it put in his name and making
the requisite payment therefor.   There is no such proof in this case.

*New York General Term, November,* 1872.

Present — INGRAHAM, *P. J.,* LEARNED, *J.*

THIS action was tried before ex-judge JNO. SLOSSON, referee, to whom the cause was referred to hear and determine. Both plaintiff and defendant appealed from the judgment, and the referee's report is as follows:

*Facts.* First. On the 13th March, 1858, the firm of Martin Cobb & Co., of New Orleans, and Robert A. Bell (the plaintiff's intestate) of Louisville, Kentucky, purchased at sheriff's sale, in New Orleans, a steamboat called the "Eclipse" for $29,000, on a credit of twelve months, at five per cent interest. The purchase was made in the name of Robert (not Robert A.) Bell, who gave his bond for the purchase-money with the said firm of Martin Cobb & Co. as sureties.

Second. On the 13th of March, 1858, Harry I. Spotts, the defendant's intestate, at New Orleans aforesaid, made and delivered to said Robert A. Bell his promissory note of that date, whereby, twelve months after date, he promised to pay to the order of said Robert A. Bell $15,225, without defalcation, for value received, negotiable and payable with eight per cent interest from date of maturity. This is one of the notes sued upon in this action, and for the whole of which the plaintiff claims judgment.

The amount of the note is exactly one-half of the purchase-money of the boat, with five per cent interest. added for one year, that being the period of credit on the purchase.

Third. Bell and Spotts had originally contemplated or intended to purchase the boat on joint account, each to be interested one-half, and this note was given by Spotts to Bell on account of, or to represent his one-half of the purchase. But this arrangement or plan was not carried into effect. The subject of the purchase was introduced by Bell and Spotts to Martin Cobb & Co. and an agreement was entered into at or about the time of the purchase, fixing the rights and interest

of all three · parties, which was afterward embodied in the instrument of the 24th of April 1858, in the fifth finding of fact set out.

Fourth. Spotts at the time of this purchase was insolvent and out of employment, and he continued insolvent till shortly before his death in March, 1864. Robert A. Bell was also at this time under pecuniary embarrassments and continued more or less so until his death in July, 1865. All three parties, especially Bell and Spotts, appear to have been on terms of great friendship and intimacy with each other, and one object of Bell and Cobb in purchasing the boat was to give employment to Spotts as captain or master of the vessel.

Fifth. On the 24th of April, 1858, an instrument in writing of that date, under seal, was executed at New Orleans, by said Robert A. Bell and Martin Cobb & Co., by which they were to be owners each of one-half of the boat and the said parties so executing the instrument thereby agreed that in consideration of the said Harry I. Spotts taking command of said boat, they would sell to him for cash one-fourth part of said boat whenever he might deem it proper to have the same placed in his name and could make the requisite payments. It was further agreed between said parties, including (as expressed in said instrument) Harry I. Spotts, that the boat should for the present stand at the custom-house in the name of Robert Bell (in whose name the purchase was made as aforesaid). The parties signing the instrument (Martin Cobb & Co. and Robert A. Bell) further, in and by said instrument agreed to be liable for, and provide if necessary, each one-half of the purchase-money, and any losses that might occur, and that they would look individually to Harry I. Spotts for his proportion of such purchase money and losses, that is to say, one-eighth to each party. Spotts was not a formal party to the instrument, but was cognizant of and assenting to its terms and stipulations.

Sixth. Spotts took command of the said boat as master after her purchase, and ran her in that capacity on the Mis-

NEW YORK PRACTICE REPORTS.

sissippi and Ohio rivers until February, 1860, when she was wrecked in a hurricane at New Orleans.

Seventh. Spotts never received any transfer of the title to one-fourth of the boat, and there is no evidence that the title was ever out of Robert Bell or in Robert A. Bell and Martin Cobb & Co., or either of them. Spotts was unable until shortly before his death to pay in cash for one-fourth of the purchase-money of the boat. There is no evidence that he ever offered to pay for one-fourth of the boat, or demanded that the title to that extent should be placed in his name.

Eighth. There was a total loss on the whole adventure of $38,498.49, which by the terms of the agreement of 24th of April, 1858, would fall equally in the first instance on Robert A. Bell and Martin Cobb & Co. in respect to the entire adventure. On that occasion Spotts produced and exhibited to Martin Cobb & Co. a statement showing that Robert A. Bell had expended on account of the boat $19,258.66, he stated that Bell had expended that amount for the boat, and that that sum was the balance due him, and I so find the fact to be. On that statement an account was made up between Spotts and Martin Cobb & Co. to ascertain and show the amount due the latter, which was then adjusted at the same amount, $19,258.66; the insurance moneys of the boat, $15,000, had been received by Martin Cobb & Co.; the hull of the boat had been purchased by Spotts and one Benedict for $12,000; and Spotts had paid to Martin Cobb & Co. $3,000, being one-half of his one-half of the purchase-money of the hull. This amount was credited to Spotts and Spotts settled with that firm for one-fourth of the balance due them by giving his note for the same, to wit, for the sum of $4,062.31.

Ninth. There was never any accounting in respect to the boat between Martin Cobb & Co., and Bell and Spotts, or between any of them, other than the above between Spotts and Martin Cobb & Co.

Tenth. On the 10th of February, 1860, Harry I. Spotts,

at Louisville, Kentucky, made and delivered to Robert A. Bell his due bill, whereby he acknowledged that there was due from him to said Bell $2,000 for borrowed money. No time of payment is named in the due bill. No part of this sum has ever been paid. This due bill, or note, is also claimed in this action as due the plaintiff from Spotts' estate.

Eleventh. The note of $15,225 has never been paid, or any part thereof.

Twelfth. At the date of the above transaction Spotts resided at Louisville aforesaid. He removed from thence to New York in 1863, where he continued to reside until March, 1864, when he died. Robert A. Bell resided in Louisville aforesaid, and died in the city of New York in July, 1865. The plaintiff in this action was subsequently duly appointed administratrix of his estate by the surrogate of New York, and the defendants were duly appointed, by said surrogate, administrator and administratrix of the estate of Harry I. Spotts, after his death. .

On these facts, my conclusions of law are as follows:

First. In respect to the note of $15,225, it having been given for one-half interest in the boat, the consideration of it has wholly failed, by reason of the arrangement entered into between the parties, expressed in the agreement of April 24th, 1858. The plaintiff, as representing Robert A. Bell, is bound by the terms of that agreement, executed by him and 'Martin Cobb & Co., by which the entire ownership of the boat is declared to be in said Robert A. Bell and Martin Cobb & Co.; and Spotts was to have an election to become part owner with them, to the extent of one-fourth, whenever he might deem it proper to have the title to said one-fourth placed in his name, and would pay, in cash, one-fourth of the purchase-money of the boat. Until these conditions were complied with Spotts could not have claimed an ownership in the boat, nor any share in its earnings; neither, on the other hand, could Bell or Martin Cobb & Co., have

enforced payment from Spotts of one-fourth of the purchase-money of the boat.

The clause in the agreement by which Bell and Martin Cobb & Co., agreed to look individually to Spotts for his proportion of the losses, one-eighth to each party, could not, on any fair construction of the agreement, bind Spotts, although he was cognizant of and assenting to that agreement, unless he should become owner of one-fourth of the boat, according to the aforesaid conditions.

Second. The settlement with Martin Cobb & Co. was, undoubtedly, an admission by Spotts that he was liable to that firm for the amount for which he gave his note on that occasion; but Robert A. Bell was not a party to that settlement, and was not included by it, as to the amount of expenditures and losses then agreed upon between those parties; nor could he have enforced a like payment from Spotts on the ground of the admission so made to Martin Cobb & Co. As between Spotts and Martin Cobb & Co., it may be that Spotts was, for some reason, willing to concede ownership, or liability without ownership, for one-fourth the losses on his part, but such concession would not avail Bell in the absence of the other evidence to show such ownership.

Third. In respect, therefore, to the note of $15,225, the defendants are entitled to judgment that the complaint be dismissed, and I so adjudge.

Fourth. In respect to the due bill or note for $2,000, the plaintiff is entitled to judgment therefor, with interest from its date to the date of this report, amounting in all to $3,564.52, together with the costs of this action, to be levied out of the estate of the said Harry I. Spotts, and I so adjudge.

And thereupon the plaintiff duly requests the referee to find the following further conclusions of facts and of law.

*Facts.* Thirteenth. The understanding or arrangement on the part of Harry I. Spotts and between him and Robert A. Bell, under which the "Eclipse" was purchased, was that the parties interested therein should be as follows:

Martin Cobb, & Co., one-half; Robert A. Bell, one-half. That one-half, however to really belong to Harry I. Spotts, being held for him by Robert A. Bell and the $15,225, note which represents the half costs, with interest, as provided in the terms of sale, was given by Spotts to Bell, to reimburse him the one-half of the cost provided by him.

Fourteenth. That subsequently was made the arrangement shown by the agreement of April 24th, 1858.

Fifteenth. That notwithstanding the agreement of April 24th, 1858, as between Robert A. Bell and Harry I. Spotts, Mr. Bell continued to represent the half interest in the "Eclipse" solely for account of Harry I. Spotts who was entitled to the earnings and responsible for the losses thereof.

Sixteenth. That the original arrangment under which the note was given was modified by the arrangement shown by the agreement of April 24th, 1858, and the liability of Harry I. Spotts on the note reduced proportionately.

Seventeenth. (If the referee finds the fifteenth omit the seventeenth.) That from execution of the agreement of April 24th, 1858, by the permission of Robert A. Bell, Harry I. Spotts became interested in the one-fourth of Mr. Bell's half of the "Eclipse" provided to be sold to him, and responsible to that extent for all losses.

Eighteenth. That Harry I. Spotts, in his lifetime, told the witness Sturgeon that he did have an understood interest in the "Eclipse." The referee does find, in answer to this request, that Harry I. Spotts, in his lifetime, told the witness Sturgeon that he did have an understood interest in "Eclipse" to the extent of one-quarter, but that the witness was not positive; his interest might have been different from one-quarter, but that was the recollection of witness.

Nineteenth. That the understood interest which Harry I. Spotts told the witness Sturgeon he did have in the "Eclipse" referred to the one-quarter which he had the right to acquire under the agreement of April 24th, 1858.

*Law.* Fifth. That the plaintiff is entitled to judgment upon

the said promissory note, with interest thereon at the rate of eight per cent per annum from March 16th, 1859.

Sixth.    That the one-fourth of the $19,258.66, so paid out by the said Robert A. Bell, is $4,814.66, and that the plaintiff is entitled to judgment therefor, with interest.

*John E. Parsons,* for plaintiff.

*Joseph H. Dukes,* for defendant.

INGRAHAM, *P. J.* — This action is brought to recover the amount of a note and of a due bill, made by H. I. Spotts, deceased.    Various defenses were set up in the answer, viz.: A general denial, payment, the statute of limitations, and a partnership between the parties, out of which the note and due bill originated.

The referee found for the plaintiff as to the due bill, and against the plaintiff on the note.    Both parties have appealed, the one as to the finding on the due bill, and the other as to the finding on the note.

Both of the securities were in possession of the deceased at the time of his death.    The presumption arising from such possession is that they were evidences of indebtedness to Bell, the intestate of the plaintiff.

The due bill, on its face, purports to be for borrowed money; there is no proof as to its origin, or the indebtedness for it or payment of any part.

The referee finds the making and delivery of the due bill by Spotts to Bell, and that no part of it has ever been paid.

The defense rests entirely on the statements of Bell, when spoken to about putting in his claims against the estate of Spotts; that he had no claim to present, and his refusal during his life to make any claim against the estate.    He did, notwithstanding, speak of some claim against Spotts, which he thought he ought to have, but declared he had none to present.

It is also urged that Bell's pecuniary condition at this time was not good, and that he would not have so acted if these amounts were really due. On the other hand, there was the due bill, stating the consideration, the relationship between Bell and Mrs. Spotts the widow, and the want of any specific agreement with Spotts as to the sale of the steamer, which may have been sufficient reasons why he would not then make a claim on either security.

There is no clear evidence to show any defense that would be conclusive against the admission in the due bill that it was for borrowed money, nor any evidence of payment.

All the evidence regarding this due bill presented a question of fact for the decision of the referee.

There has been nothing urged on the part of the defense that would warrant us in setting aside his decision, so far as relative to the due bill.

This disposes of the appeal on the part of the defendant as to the amount for which the plaintiff has obtained judgment.

The plaintiff appeals from the decision of the referee upon the ground that he improperly rejected the claim to recover upon the note of $15,225.

In regard to this note there are facts in evidence which tend to explain its origin.

The referee finds such to have been, an intended purchase of the steamship "Eclipse," one-half of which was to be for Spotts; and this note was given to represent the one-half so intended to belong to Spotts. That this note was to reimburse Bell, who had to provide for that half on account of Spotts; that the note in suit was given for one-half of the amount of the purchase-money, with the interest added up to the time of payment. The purchase was made by Bell, on his own responsibility, with Martin Cobb & Co. as his sureties.

He also finds that this arrangement fell through in conse-

quence of a new agreement, made on the 24th April, 1858, fixing the rights and interests of all the parties.

Upon this branch of the case I think there can be no doubt that the referee was right.

The note never effected the purpose for which it was intended; and if Bell and Spotts had at first arranged to buy the steamboat for their joint interest and the purchase made had been so intended, the changes by the agreement of 24th of April, 1858, which was evidently to satisfy Martin Cobb & Co. as to their liabilities as sureties on the purchase, altered the rights and liabilities of all the parties.

By that agreement which, although purporting to be with the assent of Spotts, is only signed by Bell and Martin Cobb & Co., the ownership of the boat is to one-half in Martin Cobb & Co., and one-half in Bell.

The parties then agreed, in consideration of Spotts taking command of the boat, that the owners would. sell him one-fourth of the said boat whenever " he may deem proper to have the same placed in his name, and could make the requisite payments."

As Bell was at this time owner of the boat, he had the power to make this agreement with his sureties on the purchase, but even if this was doubted, the subsequent act of Spotts in taking the command, and the settlement of Spotts with Martin Cobb & Co., for the one-eighth purchase of them, would be sufficient evidence to show the assent of Spotts to this agreement.

It is not material to inquire whether Spotts and Bell ever completed the arrangement for transferring the one-eighth from Bell to Spotts.

Whether such purchase was completed or not would be immaterial on an inquiry into the consideration of the note in suit.

That note was evidently given to buy for Spotts one-half of the steamer with Bell.

That purchase was never completed as agreed on, or if the

purchase of Bell could be so considered, it was abandoned by the making of the agreement of 24th of April, 1858. On the execution of that agreement the whole consideration of the note failed.

Spotts had no interest in the vessel beyond a conditional agreement to sell him one-quarter of it whenever he deemed proper to take it, and could pay for it, and which he was under no obligation ever to perform.

There is no proof that he ever received from Bell such share in Bell's half, or that any thing ever passed between them, as to such interest, afterward even if it was thereafter completed it could form no consideration for the note in suit. That consideration had entirely failed by act of Bell, and the note remained in Bell's possession as worthless paper, which could not have vitality imparted to it by any subsequent agreement.

Whether or not Spotts ever became liable to Bell for any part of the steamer, under the agreement, is not in proof.

If he did, the right to recover upon such liability can in no wise be enforced in this action.

These views fully explain the cause of Bell in refusing to enforce a claim on this note against the estate of Spotts. He knew the note had not been used for the purpose for which it was given, and he could make no claim thereon, although he said he was entitled to a portion of it as much as Cobb was.

It must be remembered that the speculation in the boat had failed and been attended with a total loss. Bell may well have thought, in equity, he was entitled to the same that Spotts had allowed to Martin Cobb & Co., and he so asserted. Whether this was so or not the note in suit could in no way be used for its collection.

Both findings appealed from are correct, and the judgment must be affirmed, with costs.

LEARNED, J., concurring.